IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HELEN DARLENE RODRIGUEZ, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, <br> ACTING COMMISSIONER OF <br> SOCIAL SECURITY, <br><br> Defendant. | Case No. 4:16-CV-319-PJC |

**OPINION AND ORDER**

Plaintiff, Helen Darlene Rodriguez ("Rodriguez"), seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For the reasons discussed below, the Commissioner's decision is **REVERSED AND REMANDED**.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a

1

disability claim. 20 C.F.R. § 404.1520.[1] *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d at 1084 (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation and citation omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

## I. Background

Rodriguez was fifty-one years old on the alleged date of onset of disability and fifty-five years old on the date of the Commissioner's final decision. She has a high school education. (R. 33). She has previous experience as a dump truck driver; as an over-the-road truck driver; as a dispatcher; as a customer service representative; and as a cashier. (R. 33). In her application, she claimed to be unable to work as a result of hypothyroidism, rheumatoid arthritis, osteoarthritis, anxiety, major depression, fibromyalgia, chronic pain, irritable bowel syndrome ("IBS")", ADD, and spastic colon. (R. 191).

## II. The ALJ's Decision

In his decision, the ALJ found that Rodriguez met insured status requirements through December 31, 2016, and, at Step One, that she had not engaged in any substantial gainful activity since March 31, 2012, the alleged onset date. (R. 27). He found at Step Two that Rodriguez had severe impairments of hypothyroidism, osteoarthritis, rheumatoid arthritis ("RA"), fibromyalgia, and spastic colon/IBS. *Id.* At Step Three, he found that the impairments did not meet or medically equal any listing. (R. 29). He concluded that Rodriguez had the residual functional capacity ("RFC") "to perform the full range of 'light' work as defined in 20 CFR 404.1567(b) and 416.967(b)." *Id.* At Step Four, the ALJ determined that, based on the RFC, Rodriguez was unable to perform any past relevant work. (R. 32). At Step Five, he found that, considering Rodriguez's age, education, work experience, and residual functional capacity, there were jobs existing in significant numbers in the national economy that she could perform, including mail clerk, light unskilled work, DOT #209.687-026, 18,000 jobs in Oklahoma and 149,000 jobs nationally; electrical assembly, light work, DOT #729.687-010, 16,000 jobs in Oklahoma and

172,000 jobs nationally; and production inspector, light work, DOT #713.684-050, 17,000 jobs in Oklahoma and 195,000 jobs nationally. (R. 33).

Accordingly, the ALJ found that Rodriguez had not been under a disability from March 31, 2102, through the date of the decision. (R. 34).

### III. Issues Raised

On appeal, Rodriguez asserts that: (1) the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Rodriguez's residual functional capacity; and (2) the ALJ failed to properly evaluate Rodriguez's credibility.

### IV. Analysis

**A. Consideration of Medical Opinion Evidence**

Rodriguez alleges that the ALJ failed to properly consider treating rheumatologist Manuel Calvin, M.D.'s opinions regarding her RA, and that, because the ALJ gave Dr. Calvin's opinions little to no weight without citing to contradictory medical authority, Rodriguez's RFC was "based on (the ALJ's) own impermissible lay assessment of the raw medical data." (Dkt. 13 at 12). According to Rodriguez, "(t)he ALJ's findings are a gross mischaracterization of the record." *Id.* at 10.

Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Hackett v. Barnhart*, 395 F.3d at 1173-74 (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. *See Frey v.*

4

*Bowen*, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); *Thomas v. Barnhart*, 147 F. App'x 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

The analysis of a treating physician's opinion is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. *Watkins*, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. *Id.* "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. §§ 404.1527 and 416.927. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. *Id.* (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. *See Anderson v. Astrue*, 319 F. App'x 712, 717 (10th Cir. 2009) (unpublished).

The ALJ gave Dr. Calvin's opinion "little to no weight" for two reasons: (1) because "Dr. Calvin . . . provided little to no objective evidence to support his finding(s)" and (2) because Dr. Calvin's medical source statements were "inconsistent with the medical evidence of record, including Dr. Calvin's own treatment notes." (R. 31-32). However, though the ALJ gave little to no weight to Dr. Calvin's opinion, the ALJ found enough evidence in the record to conclude that Rodriguez's severe impairments include RA. (R. 27). Thus, the question is not whether Rodriguez has RA or not, but whether the ALJ properly weighed Dr. Calvin's opinion regarding the severity of Rodriguez's RA.

Dr. Calvin first examined Rodriguez in September 2012. (R. 317-33). Rodriguez returned to Dr. Calvin in August, 2013, for a follow-up appointment. (R. 393-402). Dr. Calvin completed questionnaires regarding Rodriguez's condition on September 15, 2013 (R. 422-29); October 2, 2013 (R. 430-45); and September 18, 2014 (R. 453-59).

Dr. Calvin ordered laboratory tests in 2012 and performed physical exams of Rodriguez in both 2012 and 2013. The ALJ referred to the laboratory test results in his opinion, just two paragraphs before he dismissed Dr. Calvin's opinion for lack of empirical evidence. (R. 30). Specifically, the ALJ wrote: "On September 11, 2012, Dr. Manuel Calvin ordered arthritis panel

6

(sic). RA factor returned as 142. CCP antibody screen returned as greater than 100, suggesting the possibility of RA. C-reactive protein was noted as .65 (normal, in a scale of 0-.80). ANA screen was negative." (R. 31) (internal record citations omitted). Additionally, Dr. Calvin's records include an elevated Westergren Sedimentation Rate of 20. (R. 332).

Dr. Calvin's 2012 treating notes include statements that Rodriguez's "left shoulder has tenderness[;] right shoulder has tenderness[;] right elbow has tenderness[;] left elbow has tenderness[;] right hand has mild OA, moderate pain w/ motion[;] left hand has mild OA, mild pain w/ motion[;] right hip has tenderness[; and] left hip has tenderness." (R. 239). The 2013 treating notes are similar: "left shoulder has tenderness[;] right shoulder has tenderness[;] right elbow has tenderness[;] left elbow has tenderness[;] right hand has mild RA changes, moderate pain w/ motion[; and] left hand has mild RA changes, moderate pain w/ motion." (R. 398). These findings were based on his physical examination of plaintiff. *Id.* In the 2013 treating notes, Dr. Calvin also includes plaintiff's report that she has "moderate-severe" symptoms and pain, including "activity limitations, fatigue, swelling of hands and morning stiffness for >3 hour(s)." (R. 399).

The ALJ also remarked that Dr. Calvin "noted nothing of elbows, hips, neck and back as he did in the medical source statement" as proof of the inconsistencies between Dr. Calvin's medical source statement and the treatment notes. (R. 32). This finding is also not supported by substantial evidence in the record. Dr. Calvin's 2013 treating notes identify tenderness in plaintiff's elbows and hips and musculoskeletal back pain and neck stiffness. (R. 398). Dr. Calvin's medical source statement is consistent with his treatment notes. In response to the question "Does your client have pain, inflammation and/or limitation of movement in the

7

following joints," Dr, Calvin checked boxes for neck, elbows, and hips. (R. 453). Dr. Calvin's medical source statement also includes diagnoses for "Rheumatoid Arthritis" and "Osteoarthritis (with bulging discs)," diagnoses consistent with back pain. *Id.*

For these reasons, the ALJ's blanket statement that Dr. Calvin "provided little to no objective evidence" to support his opinion is not supported by substantial evidence in the record. The ALJ stated that no evidence existed, but the ALJ actually summarized the results of the objective laboratory tests that Dr. Calvin ordered. Dr. Calvin also reported the results of his objective physical examinations, both in 2012 and in 2013. It is not clear whether the ALJ failed to consider the physical examination findings or whether he did not consider them to be objective evidence. However, the ALJ did accept the physical examination findings of the consultative examining physician, Dr. Leah Upton. (R. 30). The ALJ did not explain why Dr. Upton's physical examination was sufficient to constitute objective medical evidence, but Dr. Calvin's was not.

Further, both sets of Dr. Calvin's treating notes are similar to consultative examiner Dr. Upton's findings regarding Rodriguez. (R. 403-11). Dr. Upton found "mild right-sided hand weakness," as evidenced by 4/5 grip strength in the right hand and "mild degenerative joint changes in DIP and PIP joints of bilateral hands." (R. 407). Regarding Rodriguez's back pain, Dr. Upton wrote "[c]laimant moved about exam room slowly and complaints [sic] of stiffness and pain" and that "[t]oe and heel walking [was] accomplished with some difficulty with balance and complaints of pain." *Id.* Although Dr. Upton's noted that plaintiff "had full ROM [range of motion] of spine" (R. 407), she noted cervical spine pain with flexion (R. 408) and recorded reduced ROM in Rodriguez's neck, with 50/60 extension and 40/50 flexion (R. 409). Dr. Upton

8

found that Rodriguez had reduced ROM in hip abduction, with 15/20 in the left hip when standing in a neutral position and 25/40 in the left hip and 35/40 in the right hip when lying on her side, along with 20/40 right internal hip rotation and 30/50 right external hip rotation. *Id.* Rodriguez's wrist hinge ROM was also reduced, with 50/60 each in left palmar, left dorsal, right palmar, and right dorsal measurements. (R. 410). Further, Dr. Upton noted reduced ROM in Rodriguez's right radial and ulnar wrist, with 20/30 and 15/20 respectively. (R. 411). Additionally, Dr. Upton recorded mild thenar muscle atrophy of Rodriguez's right wrist. *Id.*

The ALJ accepted Dr. Upton's assessment but discounted Dr. Calvin's assessment without explanation. If the Court assumes that the ALJ discounted Dr. Calvin's opinion because he found inconsistencies between the two opinions, those inconsistencies are not clear on the face of the two opinions, as both doctors recorded evidence of plaintiff's neck, back, wrist, hand, and hip problems in their treating notes. In any case, the ALJ was required to explain why Dr. Calvin's assessment was entitled to less weight than Dr. Upton's. *Frey*, 816 F.2d at 513.

## V. Conclusion

Because the ALJ did not give specific, legitimate reasons for rejecting Dr. Calvin's opinion and because the reasons he did cite are not supported by substantial evidence in the record, the Court finds that this case should be reversed and remanded for further proceedings.

Additionally, because the Court finds that reversal is required based on the ALJ's failure to properly weigh the medical opinion evidence from Dr. Calvin, the Court does not take a position on Rodriguez's remaining argument that the ALJ failed to properly evaluate her credibility. On remand, however, the Commissioner should ensure that any new decision sufficiently addresses all issues raised by the claimant, keeping in mind that "the ALJ's

9

credibility and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). Nor does the Court take any position on the merits of Rodriguez's disability claim, and "(no) particular result" is ordered on remand. *Thompson v. Sullivan*, 987 F.2d 1482, 1492-93 (10th Cir. 1993). This case is remanded only to assure that the correct legal standards are invoked in reaching a decision based on the facts of the case. *Angel v. Barnhart*, 329 F.3d 1208, 1213-14 (10th Cir. 2003) (citing *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)).

For the reasons set forth above, the Commissioner's decision is hereby **REVERSED AND REMANDED.**

**ENTERED** this (25th) day of May, 2017.

_____
Paul J. Cleary
United States Magistrate Judge